Eileen R. Johnson (ISB No. 9935)
eileen@ertzjohnson.com
Brian A. Ertz (ISB No. 9960)
brian@ertzjohnson.com
ERTZ JOHNSON LLP
P.O. Box 665
Boise, Idaho 83701
(208) 779-2929 (Telephone)
(208) 416-6665 (Fax)

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

|  |  |
|---|---|
| **KIMBERLY BRITTON***,* | Case No.  1:19-cv-309 |
| *Plaintiff,* |  |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| **THE BIRCHES, LLC; TOMLINSON & ASSOCIATES, INC.; VICKIE TAIT; JOSIE CASTENEDA;** and **JOHN AND JANE DOES I-X** Whose Identities Are Unknown, |  |
| *Defendants*. |  |

COMES NOW Plaintiff KIMBERLY BRITTON, by and through her counsel, Eileen R. Johnson and Brian A. Ertz of Ertz Johnson LLP, for causes of action against Defendants, complaining and alleging as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 1

1331 in that this action arises under the laws of the United States, namely 42 U.S.C. §§ 3604, and 3613.

2.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in this District.

3.      Based on the allegations set forth herein, the Court has personal jurisdiction over all Defendants in this action.

4.      Defendants' most recent act of discrimination in this matter occurred on or about March 10, 2014.

5.      An administrative complaint was submitted to U.S. Department of Housing and Urban Development (HUD) on or about May 21, 2014.

6.      The HUD administrative complaint was perfected on or about March 3, 2015.

7.      The administrative complaint was withdrawn from HUD on or about February 28, 2019 without resolution.

8.      The statute of limitations for Plaintiff's causes of action against Defendants, sounding in discrimination based on familial status and disability, was tolled during the period the administrative complaint was within HUD administrative investigation process.

### III.    PARTIES

9.      Plaintiff KIMBERLY BRITTON ("Plaintiff") is now, and at all times relevant herein was, a resident of Canyon County, State of Idaho.

10.      Defendant THE BIRCHES, LLC (hereinafter "Defendant Birches") is now, and at all times relevant herein was, an Idaho limited liability company doing business in Canyon

County, State of Idaho.

11.     Defendant Birches owns the property that is the subject of Plaintiff's allegations set forth herein, Birches at Brandt's Landing located at 16390 N. Franklin Blvd., Nampa, Canyon County, Idaho (hereinafter "the Birches").

12.     Defendant TOMLINSON & ASSOCIATES, INC (hereinafter "Defendant Tomlinson") is now, and at all times relevant herein was, an Idaho corporation doing business in Canyon County, State of Idaho.

13.     Defendant Birches retained Defendant Tomlinson to perform comprehensive property management services at the Birches.

14.     Defendant Tomlinson provided comprehensive property management services for Defendant Birches at all times relevant to Plaintiff's allegations against Defendants.

15.     Defendant JOSIE CASTANEDA (hereinafter "Defendant Casteneda") is now, and at all times relevant herein was, a resident of Canyon County, State of Idaho.

16.     Defendant Castaneda was the On-Site Manager of the Birches at Brandt's Landing at all times relevant to the Plaintiff's allegations against Defendants.

17.     Defendant Castaneda was an employee of Defendant Tomlinson at all times relevant to Plaintiff's allegations against Defendants.

18.     Defendant Castaneda was acting within the scope of her employment at all times relevant to Plaintiff's allegations against Defendants.

19.     Defendant VICKIE TAIT (hereinafter "Defendant Tait") is now, and at all times relevant herein was, a resident of Canyon County, State of Idaho.

20.     Defendant Tait was an employee of Defendant Tomlinson at all times relevant to Plaintiff's allegations against Defendants.

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 3

21.     Defendant Tait was the Leasing Agent of the Birches at Brandt's Landing at all times relevant to the Plaintiff's allegations against Defendants.

22.     Defendant Tait was acting within the scope of her employment at all times relevant to Plaintiff's allegations against Defendants.

23.     Defendant Castaneda was acting as the agent of Defendant Tomlinson at all times relevant to Plaintiff's allegations against Defendants .

24.     Defendant Tait was acting as the agent of Defendant Tomlinson at all times relevant to Plaintiff's allegations against Defendants .

25.     Defendant Tomlinson was acting as the agent of Defendant Birches at all times relevant to Plaintiff's allegations against Defendants.

26.     Defendant Birches was acting as the principle of Defendant Tomlinson at all times relevant to Plaintiff's allegations against Defendants.

27.     Defendant Tomlinson was acting as the principle of Defendants Castaneda and Tait at all times relevant to Plaintiff's allegations against Defendants.

28.     Defendant Birches is liable for the acts and omissions of Defendants Tomlinson, Castaneda, and Tait pursuant to the doctrine of *respondeat superior*.

29.     Defendant Tomlinson is liable for the acts and omissions of Defendants Castaneda and Tait pursuant to the doctrine of *respondeat superior*.

30.     Defendant Castaneda is liable for her own acts and omissions in violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq*.

31.     Defendant Tait is liable for her own acts and omissions in violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq*.

32.     Defendants JOHN and JANE DOES ("Does") are unidentified natural persons,

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 4

corporations, trusts, partnerships, joint ventures, associations, and/or any other artificial, business, or legal entity causing or contributing to Plaintiff's damages as described herein.

## IV.  STATEMENT OF FACTS

33.     Plaintiff is a person with a disability pursuant to the Fair Housing Act.

34.     Plaintiff suffers from lumbar disc disease.

35.     The symptoms of Plaintiff's lumbar disc disease include intermittent or continuous back pain, spasm of the back muscles, sciatica, muscle weakness in the legs, numbness in the leg or foot, decreased reflexes at the knee or ankle, and changes in bladder or bowel function.

36.     The symptoms of Plaintiff's disability are easily triggered by certain activities.

37.     Once triggered, the symptoms of Plaintiff's disability can last for hours or days, incapacitating Plaintiff.

38.     Plaintiff must take great care to avoid triggering the symptoms of her disability.

39.     Once the symptoms of her disability are triggered, Plaintiff is unable to perform activities of daily living.

40.     As a result of her disability, Plaintiff must carefully avoid ascending or descending stairs.

41.     In addition to avoiding the use of stairs, Plaintiff avoids bending, kneeling, lifting, carrying, or sitting/standing for extended periods.

### *Plaintiff's Apartment at the Birches at Brandt's Landing*

42.     Plaintiff, Plaintiff's former husband, and their two minor sons moved into the Birches at Brandt's Landing (hereinafter "the Birches") which is located at 16378 N. Franklin

Blvd., Nampa, Idaho on or about December 8, 2012.

43. Plaintiff's family resided in Apartment G2 (hereinafter "Two-Bedroom Apartment").

44. Plaintiff's lease was for a period of six (6) months, through June 30, 2013.

45. Plaintiff and/or her former husband signed Tomlinson and Associates, Inc. Community Rental Policy (hereinafter "Rental Policy") on or about December 4, 2012.

46. The Rental Policy included various provisions including related to tenant screening criteria, renter's insurance, animals, and Defendants' occupancy standards.

47. Plaintiff and her former husband signed the lease agreement on or about December 8, 2012.

48. At the time Plaintiff's family moved into the Two Bedroom Apartment, Plaintiff's sons were nine (9) and six (6) years of age.

49. The Two Bedroom Apartment was a ground floor apartment, which Plaintiff required due to her disability.

50. The Two Bedroom Apartment was approximately 1003 square feet in size.

51. The sizes of the two bedrooms were 11'2" x 9'3" (104 square feet) and 11'5" x 12'3" (140.5 square feet).

52. Plaintiff's two sons shared one bedroom and Plaintiff and her former husband shared the other bedroom.

53. The monthly rent for the Two Bedroom Apartment was $725.00.

54. Plaintiff's family received a $50.00 credit toward the monthly rent with coupons provided by Defendants.

55. Therefore, Plaintiff's family paid $675.00 in rent each month for the Two

COMPLAINT AND DEMAND FOR JURY TRIAL                                        Page 6

Bedroom Apartment which allowed Plaintiff and her husband to save a small amount of money each month to enable them to ultimately buy their first home.

56.     Plaintiff and her family were happy in their Two Bedroom Apartment.

57.     Plaintiff and her former husband planned to remain in the Two Bedroom Apartment until they had saved enough money to qualify for a loan to buy their first home.

58.     Defendant Tomlinson's occupancy standards and hardship exemption (hereinafter "Occupancy Policy"), states:

### A. Occupancy Policy

1.  A maximum of two persons per one bedroom apartment, four persons per two bedroom apartment, and six persons per three bedroom apartment subject to the exceptions and qualifications set forth in paragraphs A. 3-6 and B. 1-2 below.  Lofts and dens will be considered bedrooms for purposes of occupancy;

2.  Gender shall not be considered, nor age or the relationship of occupants in determining whom may reside in the unit, except for A. 4., below, and except for a limitation on the number of adults (people over the age of eighteen (18)) consistent with paragraph A. 2, above;

3.  The following is a special exemption for three bedroom units only (including two bedroom with den, and two bedroom with loft units):

    if the seventh person is a family group wishing to rent a three bedroom unit is an infant (defined as a child twelve months of age or younger), the family group will be granted an exception from the occupancy policy to allow up to seven (7) people to occupy the apartment.  The exemption shall expire upon the end of the lease term following the infant's second birthday;

4.  For purposes of determining the maximum number of occupants who can reside in an apartment, the number of persons in a household is to be counted as of the date of lease signing; therefore, unborn children will not be counted as additional occupants.  In accordance with applicable HUD regulations and/or guidelines, including, "Occupancy Requirements of Subsidized Multifamily Housing Programs," Handbook 4350.3, the unborn child may be counted at the family's request to make the family eligible for a larger unit, provided that the family's eligibility for the smaller unit is not affected;

5.  The addition of a child to a family during the lease term will not affect the family's continued occupancy; however, if the additional child causes the

family to exceed the above occupancy standards, the lease will not be renewed at the end of the term.  In the case of an addition of an infant (as defined above) by birth or adoption, the family shall have until the end of the lease term following the infant's second birthday to comply with the occupancy policy.

B. Hardship Exemption

In the event:

1. The property has no units available that are of the correct size for a family, but the property does have units of the correct size; and

2. the family otherwise would be homeless through dispossession or lack of current housing:

> The family will be permitted to occupy a unit one size smaller than provided under the occupancy policy if such a unit is available.  In the family accepts housing under this hardship exemption, the family agrees to transfer to the next available unit of the correct size upon thirty (30) days [sic] notice.

59.     Upon information and belief, the Occupancy Policy had been instituted after Defendant Tomlinson, at least one of its employees, and other individuals and/or entities executed a Consent Order on June 21, 2002 which resolved a claim of discrimination based on familial status (District of Idaho Case No. cv-00-724-S-BLW).

60.     Months prior to the end of their first six month lease term, on or about February 27, 2013, Plaintiff and her former husband executed a renewed six month lease for the term July 1, 2013 through December 31, 2013.

61.     On or about April 1, 2013, while in the Birches management office to pay rent, Plaintiff mentioned to Defendant Castaneda and/or Defendant Tait that Plaintiff was pregnant with her third child.

62.     Defendant Castaneda and/or Defendant Tait informed Plaintiff that Plaintiff and her family would be required to move from the Two Bedroom Apartment by the time the new

baby reached six (6) months of age pursuant to Defendants' Occupancy Policy.

63.     According to Defendant Castaneda and/or Defendant Tait, the Two-Bedroom Apartment would be too small for Plaintiff, Plaintiff's former husband and three children because Defendants' Occupancy Policy allowed two persons per bedroom.

64.     Defendant Castaneda and/or Defendant Tait handed Plaintiff a copy of the Occupancy Policy.

65.     Plaintiff reviewed the Occupancy Policy and understood and interpreted the policy to allow Plaintiff and her family to remain in the Two Bedroom Apartment for two years after her third son was to be born.

66.     When Plaintiff returned to the Birches management office to discuss the issue with Defendant Castaneda and/or Defendant Tait, Defendant Castaneda and/or Defendant Tait rejected Plaintiff's interpretation of the Occupancy Policy, and reiterated that Plaintiff's family would be required to move out of the Two Bedroom Apartment when Plaintiff's third son reached six (6) months of age.

67.     Plaintiff informed Defendant Castaneda and/or Defendant Tait that the written Occupancy Policy was expressly different than what Plaintiff was being told by Defendants Castaneda and/or Tait.

68.     Defendant Castaneda informed Plaintiff that Plaintiff was misinterpreting the Occupancy Policy.

69.     Plaintiff inquired if the Birches had larger apartments that Plaintiff's family might move to when Defendants would require Plaintiff's family to move out of the Two Bedroom Apartment.

70.     Defendant Castaneda and/or Defendant Tait responded that there were three-

bedroom apartments at the Birches, at a higher monthly rent than Plaintiff's Two Bedroom Apartment.

71.    Although Defendant Tait kept a waiting list for three bedroom apartments, neither Defendant Tait nor Defendant Castaneda informed Plaintiff of the waiting list.

72.    The specter of having to move her household, even within the same apartment complex, and the additional monthly rent required for a three bedroom apartment caused Plaintiff significant anxiety and stress during the months followingto file April 1, 2013.

73.    On or about May 27, 2013, while at the community pool, Plaintiff learned from another Birches tenant that there was a waiting list for three bedroom apartments at the Birches.

74.    When Plaintiff went to the Birches management office to inquire about the waiting list, Defendants Castaneda and/or Defendant Tait confirmed that there was indeed a waiting list for three bedroom apartments at the Birches.

75.    Plaintiff was reasonably frustrated that Defendant Castaneda and/or Defendant Tait did not inform Plaintiff of the waiting list two months prior despite Plaintiff's requests that Defendant provide Plaintiff's family with another alternative pursuant to the Occupancy Policy.

76.    On or about May 27, 2013, Plaintiff asked Defendant Castaneda and/or Defendant Tait to add Plaintiff's name to the waiting list for ground floor three bedroom apartments.

77.    Plaintiff expressly notified Defendant Castaneda and/or Defendant Tait on that date that Plaintiff could only reside in an apartment on the ground level, like her current Two Bedroom Apartment.

78.    Although there were also three bedroom apartments at the Birches that were of a "townhouse" layout, with an exterior stairway to the apartments' front doors, and an internal

stairway to the second floor of the apartments, such apartments were not an option for Plaintiff due to her disability.

79.     Plaintiff explained that she would require a ground floor three bedroom apartment because of her lumbar disc disease, which Plaintiff discussed with Defendant Castaneda and/or Defendant Tait.

80.     Plaintiff also stated that a secondary benefit of a ground floor apartment would be avoidance of excess noise for a downstairs neighbor as Plaintiff would have three young children living in the home.

81.     Based on her discussion of her disability with Defendant Castaneda and/or Defendant Tait as a basis for Plaintiff's need for a ground floor three bedroom apartment, Plaintiff reasonably believed that Defendant Castaneda and/or Defendant Tait understood that Plaintiff required a ground floor apartment and the reasons therefor.

82.     At no time did Defendant Castaneda and/or Defendant Tait inform Plaintiff of a formal process for reasonable accommodation requests, nor did Defendants inform Plaintiff that Plaintiff was required to submit a reasonable accommodation request to obtain a ground floor three bedroom apartment.

83.     Neither Defendant Castaneda nor Defendant Tait informed Plaintiff at that time that it was highly unlikely that a ground floor three bedroom apartment would become available to Plaintiff's family by the time Plaintiff's third son reached six (6) months of age.

84.     Of the one hundred thirty-eight (138) apartments at the Birches, thirty-two (32) are three bedroom apartments.

85.     Of the thirty-two three (32) bedroom apartments at the Birches, only eight (8) are ground floor three bedroom apartments.

86.     Upon information and belief, ground floor three bedroom apartments have much lower tenant turn over than the average apartment at the Birches.

87.     Plaintiff reasonably believed that Defendants' waiting list for ground floor three bedroom apartments was a document kept by Defendants to offer on a first come, first served basis.

88.     At no time did Defendant Castaneda or Defendant Tait inform Plaintiff that Defendants' waiting list was in fact nothing more than informal scraps of paper kept by Defendant Tait containing names and phone numbers of prospective tenants, with no semblance of order of the requests.

89.     Plaintiff's lease term renewed at the end of the first six month lease period due to Plaintiff's February 2013 early lease renewal.

90.     Plaintiff began to suffer increasing anxiety, stress, insomnia, tearfulness, and frustration as the weeks and months passed because Plaintiff reasonably believed that Defendants would force Plaintiff's family from their Two Bedroom Apartment six (6) months after her son was born.

91.     An increase in monthly rent that would be required, if Plaintiff was able to obtain a ground floor three bedroom apartment, would cause a significant delay in the family saving enough money to qualify to buy their first home, which had been the family's plan since moving into the Birches.

92.     Plaintiff also felt embarrassed and frustrated due to Defendant Castaneda's and Defendant Tait's increasingly dismissive and annoyed attitude toward Plaintiff.

93.     Plaintiff's pregnancy suffered as a result of her stress and anxiety symptoms as her blood pressure increased and she began to lose weight.

94.     Plaintiff informed Defendant Castaneda and/or Defendant Tait that Plaintiff's pregnancy was becoming more difficult due to the anxiety and stress of knowing Defendants intended to Force Plaintiff and her family from their home.

95.     Defendant Castaneda appeared to be unmoved by Plaintiff's difficulties, stating, "it is what it is."

96.     Plaintiff sought medical treatment for the symptoms of her stress and anxiety and was ordered to take bed rest until the end of her pregnancy.

97.     At the time of the events described herein, prior to the birth of Plaintiff's third son, Plaintiffs two sons were nine (9) and (6) years of age.

98.     Plaintiff's sons attended Birch Elementary School, which they were enrolled in at the time Plaintiff's family moved to the Birches.

99.     Plaintiff's two oldest sons suffer from significant ADHD symptoms and difficulties and had Individualized Education Programs (IEPs) at Birch Elementary School.

100.    Plaintiff's sons had made meaningful progress in learning and behavior since enrolling at Birch Elementary School.

101.    Birch Elementary School District is very small, with an area of approximately 2.8 square miles.

102.    A family is required to reside within the school district for the school in order to qualify for enrollment there.

103.    If Plaintiff's family moved outside of the Birch Elementary School District, Plaintiff's two sons would be forced to change schools, requiring her sons to reacclimate to a new school building, teachers, programs, routines, expectations, and students, which would have negative consequences for their academic and behavioral progress.

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 13

104.    Moreover, her sons would be moved to a new school in the middle of the school year, making transition even more difficult for them.

105.    Plaintiff began searching Craigslist and other on-line sites listing available rental apartments and homes that were within the family's budget, within the Birch Elementary School District, and on the ground floor.

106.    Plaintiff applied for several potential alternative homes but due to the competitive rental market, the small geographic area of the school district, and the few homes that met the necessary criteria for Plaintiff and her family, Plaintiff was not successful in securing alternative housing for her family.

107.    Each rejection caused Plaintiff to suffer additional anxiety and hopelessness, which only exacerbated the physical and emotional difficulties Plaintiff was suffering as a result of Defendants' stated intention to force Plaintiff's family out of their Two Bedroom Apartment.

108.    Plaintiff informed Defendant Castaneda and/or Defendant Tait on more than one occasion of Plaintiff's stress and related health difficulties related to Defendants' forcing Plaintiff and her family from the Two Bedroom Apartment.

109.    Plaintiff informed Defendant Castaneda and/or Defendant Tait on more than one occasion that Plaintiff's sons needed to remain in the Birches Elementary School District due to their developmental disabilities.

110.    Plaintiff became tearful on more than one occasion in the presence of Defendant Castaneda and/or Defendant Tait, who responded that there was nothing they could do.

111.    Plaintiff felt humiliated by the conduct of Defendants Castaneda and Tait.

112.    Plaintiff went into early labor, in large part due to the anxiety and stress related to Defendants' unyielding application of Defendants' Occupancy Policy.

113.    Plaintiff's third son was born on September 4, 2013.

114.    In October 2013, Plaintiff again inquired with Defendant Castaneda and/or Defendant Tait about Plaintiff's position on the waiting list for a ground floor three bedroom apartment at the Birches.

115.    Defendant Castaneda and/or Defendant Tait informed Plaintiff that a ground floor three bedroom apartment was available for Plaintiff to view, although that apartment had already been rented out to someone else.

116.    Plaintiff asked to view the ground floor three bedroom apartment.

117.    It was at that time that Plaintiff learned that there were only eight (8) ground floor three bedroom apartments at the Birches which contained no stairs, like Plaintiffs Two Bedroom Apartment.

118.    Defendant Castaneda and/or Defendant Tait informed Plaintiff that ground floor three bedroom apartments at the Birches do not become available very often.

119.    This was of great concern to Plaintiff as she realized that the chance of Plaintiff's family being forced out of the Birches altogether was a likely scenario.

120.    Defendant Castaneda and/or Defendant Tait informed Plaintiff that if a three bedroom apartment did not become available by the time Plaintiff's infant son reached six (6) months of age, Plaintiff's family would need to move from the Birches.

121.    In addition to searching for alternative housing on-line, Plaintiff began driving herself and her sons up and down each road within the Birches Elementary School District several times per week, looking for "For Rent" signs.

122.    In December 2013, Plaintiff visited the Birches management office to inquire about Plaintiff's position on the waiting list for a ground floor three bedroom apartment because

Plaintiff's lease was to expire or renew on December 31, 2013.

123.    At that time, Defendant Castaneda and/or Defendant Tait informed Plaintiff that no ground floor three bedroom apartments were available.

124.    Plaintiff's family did not have alternative housing to allow the family to move from the Birches on December 31, 2013, when the current lease expired.

125.    If Plaintiff's lease for the Two Bedroom Apartment renewed on January 1, 2014 for another six (6) month term, the shortest lease available, that lease would not terminate until June 30, 2014.

126.    However, Plaintiff's infant son would reach six (6) months of age in March 2014, and Plaintiff family would be forced out of the Two Bedroom Apartment halfway through the renewed lease.

127.    Therefore, Plaintiff requested that Defendants allow Plaintiff and her family to sign a three month lease to allow them to stay in the Two Bedroom Apartment while Plaintiff continued searching for alternative housing ahead of her infant son reaching six (6) months of age on or about March 4, 2014.

128.    Plaintiff explained that, despite her ongoing efforts to identify and secure alternative housing for her family due to Defendants' Occupancy Policy, Plaintiff had been unsuccessful.

129.    Plaintiff informed Defendant Castaneda and/or Defendant Tait of the emotional and physical difficulties Defendants' stated intentions to force Plaintiff's family from their Two Bedroom Apartment was continuing to cause Plaintiff.

130.    Although Defendant Castaneda and/or Defendant Tait stated that she would inquire with Defendant Tomlinson's corporate office about allowing a three month lease,

Defendant Castaneda and/or Defendant Tait reiterated that Plaintiff's family would be required to move from the Two Bedroom Apartment by the time Plaintiff's infant son reached six (6) months of age.

131.    Plaintiff had an anxiety attack and remained in bed for several days.

132.    Just prior to December 31, 2013, Defendant Castaneda and/or Defendant Tait informed Plaintiff that Defendant Castaneda and/or Defendant Tait would renew Plaintiff's lease for the Two-Bedroom Apartment for an additional six months.

133.    Defendant Castaneda and/or Defendant Tait warned Plaintiff not to tell anyone about the renewed lease because Plaintiff's infant would not be added to the lease in violation of Defendants' policies.

134.    However, Defendant Castaneda and/or Defendant Tait informed Plaintiff that Defendants would not renew Plaintiff's lease when it expired in June 2014.

135.    Plaintiff reiterated her requests that Defendant Castaneda and/or Defendant Tait leave Plaintiff's name on the waiting list for a three bedroom ground floor apartment at the Birches.

136.    Plaintiff continued her exhaustive search for suitable alternative housing for her family.

137.    Over the next couple of months, when paying the family's monthly rent at the Birches management office, Plaintiff continued to inquire with Defendants Castaneda and Tait about Plaintiff's family's position on Defendant's waiting list for a three bedroom ground floor apartment.

138.    Defendant Castaneda and/or Defendant Tait continued to inform Plaintiff that no three bedroom ground floor apartments were available for Plaintiff's family.

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 17

139.    Defendant Castaneda and/or Defendant Tait continued to remind Plaintiff that Plaintiff's family would be required to move from the Two Bedroom Apartment at the end of the current lease period whether or not a three bedroom ground floor apartment had become available for Plaintiff's family.

140.    On or about March 3, 2014, Plaintiff spoke with Defendant Castaneda by phone.

141.    Plaintiff informed Defendants Castaneda and Tait that Plaintiff had been unsuccessful in identifying and securing alternative housing and asked Defendants what would happen if Plaintiff was unable to secure alternative housing and a three bedroom ground floor apartment did not become available by the time Plaintiff's lease terminated.

142.    Defendant Castaneda responded, "you have to move.  I cannot stress this enough. You have to move to a three bedroom.  Upstairs, downstairs, whatever."

143.    Plaintiff heard Defendant Tait state in the background, "would you like me to write it down for you?"

144.    Defendant Castaneda informed Plaintiff that Plaintiff would need to contact Defendants two months prior to the end of Plaintiff's lease to see if any three bedroom apartments would be available.

145.    Plaintiff asked Defendant Castaneda how far down Defendants' waiting list Plaintiff was for a ground floor three bedroom apartment.

146.    Defendant Castaneda stated that there were "quite a few people on the list."

147.    Defendant Castaneda asked Plaintiff, "now, are you going to be very picky again like last time and say that [the three bedroom apartment] has to be on the ground floor?"

148.    Plaintiff responded, "I'm preferring [a three bedroom apartment] on the ground floor because I really don't want to do the stairs, but I have to have a place to live, too.  If I have

to be out of my apartment by the end of June because of the baby, I don't really have a choice.

149.  Plaintiff confirmed that Defendants would not renew Plaintiff's lease when it expired at the end of June 2014.

150.  Defendant Castaneda stated that Plaintiff cannot be particular about the three bedroom apartment Plaintiff might be offered.

151.  Fortunately, Plaintiff was finally able to secure another place for her family to live within the Birch Elementary School District on or about March 5, 2014.

152.  The new home was one story.

153.  The rent for the new home was higher than the $675.00 in monthly rent Plaintiff's family paid for the Two Bedroom Apartment.

154.  The rent for the Two Bedroom Apartment included water, sewer, or trash utilities but the new home did not.

155.  Plaintiff notified Defendants that she had secured alternative housing on or about March 5, 2014 and inquired regarding whether Defendants would allow Plaintiff to break the lease  of the Two Bedroom Apartment.

156.  Defendant Castaneda and/or Defendant Tait agreed that Defendants would allow Plaintiff to break her lease of the Two Bedroom Apartment.

157.  On or about March 10, 2014 Plaintiff spoke with Defendant Tait by phone. Plaintiff asked Defendant Tait to provide Plaintiff with the date that Defendants had placed Plaintiff's name on the waiting list for a three bedroom apartment.

158.  Defendant Tait responded that Defendants do not keep dates for the waiting list.

159.  Plaintiff asked Defendant Tait how far down the waiting list Plaintiff was.

160.  Defendant Tait responded that she would look at the waiting list and call Plaintiff

back.

161.    Plaintiff asked for confirmation that Defendants had received Plaintiff's Thirty Day Notice to vacate the Two Bedroom Apartment, and that Plaintiff would not be penalized financially for vacating the Two Bedroom Apartment prior to the end of the current lease period.

162.    Defendant Tait called Plaintiff back and asked Plaintiff what type of documentation Plaintiff would like to confirm that Defendants received Plaintiff's Thirty Day Notice to vacate the Two Bedroom Apartment, and confirming that Plaintiff would not be penalized financially for vacating the Two Bedroom Apartment prior to the end of the current lease period.

163.    Defendant Tait informed Plaintiff that the Two Bedroom Apartment had already been re-rented.

164.    Plaintiff asked that Defendant provide the documentation about vacating the Two Bedroom Apartment without penalty by the following day so Plaintiff had the confirmation prior to executing the lease on Plaintiff's new home.

165.    Defendant Tait stated that Defendants were very busy and would get to it when they could.

166.    Plaintiff asked Defendant Tait if Defendant Tait had located Plaintiff's position on Defendant's waiting list for three bedroom apartments.

167.    Defendant Tait responded no, because Defendant don't keep a waiting list stating, "It's very informal."

168.    Heidi Nice of Intermountain Fair Housing Council (IFHC) was a participant in this call with Defendant Tait.

169.    Plaintiff's family vacated the Two Bedroom Apartment on or about March 31, 2014.

170.    Defendants did not assess fees against Plaintiff's family for the early termination of the Plaintiff's lease.

171.    The move to the new home delayed Plaintiff's ability to save enough money to qualify to purchase a home by months.

172.    Plaintiff and her family would not have moved from the Two Bedroom Apartment but for Defendants forcing the family to vacate the Two Bedroom Apartment.

173.    Defendants are jointly and severally liable for Plaintiff's damages incurred, as described herein.

**CAUSES OF ACTION**

FIRST CAUSE OF ACTION

**For Violations of The Fair Housing Act 42 U.S.C. § 3601 *et seq.***
***By Plaintiff Against All Defendants***

Familial Status

174.    Plaintiff incorporates all preceding allegations herein by reference as though fully set forth herein.

175.    Defendants discriminated against Plaintiff based on familial status after Defendants learned that Plaintiff was pregnant with her third son, in violation of the Fair Housing Act; Sections 3604(a), 3604(b), 3604(c), and 3604(d).

176.    Defendants Castaneda and Tait knowingly and willingly applied Defendants' Occupancy Policy in a discriminatory manner against Plaintiff and Plaintiff's family.

177.    Defendants discriminated against Plaintiff by and through Defendants Castaneda and/or Tait's unfounded and expressly incorrect application of Defendants' Occupancy Policy in a manner that harmed Plaintiff and ultimately forced Plaintiff and Plaintiff's family from their Two Bedroom Apartment.

178.    Defendants discriminated against Plaintiff by and through Defendants Castaneda and/or Tait's failure and/or refusal to research or verify the proper application of Defendants' Occupancy Policy, despite being notified by Plaintiff of the specific and significant differences between Defendants' written Occupancy Policy and Defendant Castaneda and/or Tait's application of Defendants' Occupancy Policy in a manner that harmed Plaintiff and ultimately forced Plaintiff and Plaintiff's family from their Two Bedroom Apartment.

179.    Defendants discriminated against Plaintiff by and through Defendants Castaneda and/or Tait's failure and/or refusal to notify Plaintiff of the "Hardship Exemption" of Defendants' Occupancy Policy, resulting in harm to Plaintiff and Plaintiff and her family being forced from their Two Bedroom Apartment.

180.    Defendants continually and repeatedly discriminated against Plaintiff by and through Defendants Castaneda and/or Tait's knowing and express falsehoods regarding the waiting list for three bedroom apartments.

181.    Upon information and belief, Defendants engaged in a pattern and practice of discrimination based on familial status, despite previous litigation against Defendant Tomlinson for similar discrimination and despite a Consent Order that contained express guidance as to the minimum provisions of an acceptable Occupancy Policy.

182.    Therefore, Defendant Tomlinson has been on notice since at least 2002 that it must train and supervise its employees, representatives, managers, and/or agents to ensure that

each complies with the Fair Housing Act.

<u>Handicap</u>

183.    Plaintiff incorporates all preceding allegations herein by reference as though fully set forth herein.

184.    Defendants also discriminated against Plaintiff based on handicap in violation of the Fair Housing Act Section 3604(f).

185.    Plaintiff has handicaps and had handicaps, as that term is defined by the Fair Housing Act, during her tenancy at the Birches and at all times relevant herein.

186.    Defendants had knowledge of Plaintiff's handicaps as Plaintiff expressly informed Defendants of Plaintiff's handicap on more than one occasion.

187.    Defendants knew or reasonably should have known of Plaintiff's handicaps.

188.    Defendants discriminated in the terms, conditions and privileges of the sale or rental of a dwelling, and the services and facilities in connection therewith, on the basis of handicap, in violation of the Fair Housing Act.

189.    Defendants made and/or published discriminatory statements in violation of the Fair Housing Act.

190.    Defendants' acts and omissions denied and limited services or facilities in connection with the rental of a dwelling because of handicap.

191.    Defendants engaged in conduct relating to the provision of housing or services and facilities in connection therewith that otherwise made unavailable or denied a dwelling to a person because of handicap.

192.    Accommodation of Plaintiff's handicaps by allowing her to remain in the Two Bedroom Apartment with her family was both reasonable and necessary to afford Plaintiff an

equal opportunity to use and enjoy the premises.

193.    Plaintiff requested reasonable accommodation to allow her and her family to reside in a ground floor apartment by notifying Defendant Castaneda and/or Defendant Tait of Plaintiff's disability and the reasons a ground floor apartment would be necessary.

194.    Defendants refused Plaintiff's requests for reasonable accommodations.

195.    As a result of the Defendants' conduct, Plaintiff suffered loss of housing opportunity and emotional distress resulting in anxiety, panic, depression, irritability, insomnia, lack of appetite, tearfulness, hopelessness, high blood pressure, significant weight loss during pregnancy, and financial damages.

196.    Defendants' conduct was willful and intentional and exhibited reckless or callous indifference for Plaintiff's federally protected rights.

197.    Because Plaintiff has been injured by Defendants' discriminatory housing practices, Plaintiff is an aggrieved person as that term is defined by the Fair Housing Act.

198.    Defendants Birches and Tomlinson had a non-delegable duty to train and supervise their employees, representatives, managers, and/or agents to ensure that each complied with the Fair Housing Act.

199.    Defendant Tomlinson failed to train and supervise its employees, representatives, managers, and/or agents to ensure that each complied with the Fair Housing Act.

200.    Defendant Birches failed to train, supervise, inquire and/or ensure that its agents and/or representatives complied with the Fair Housing Act.

<u>Interference, Coercion, or Intimidation</u>

201.    Plaintiff incorporates all preceding allegations herein by reference as though fully set forth.

202.    Defendants coerced, intimidated, threatened, and/or interfered with Plaintiff in the exercise or enjoyment of, or on account of Plaintiff having exercised or enjoyed her rights granted or protected by the Fair Housing Act, in violation of 42 U.S. Code § 3617.

203.    Plaintiff is entitled to actual damages, general damages, punitive damages and to recover her reasonable attorney's fees and costs pursuant to 42 U.S. Code § 3613(a)(1)(c).

## VI.    RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.    For a declaration that Defendants have violated the Fair Housing Act;

2.    For temporary, preliminary, and permanent relief against all practices, breaches, and violations of law complained of herein;

3.    For the Court to enjoin the Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with said Defendants, from failing or refusing to comply with all requirements of the Fair Housing Act and its implementing regulations;

4.    For affirmative relief pursuant to U.S.C. § 3613(c) requiring the Defendants to: (a) arrange for and, along with their partners, agents, employees, assignees and all persons acting in concert with or participating with them, attend, at Defendants' own expense, training regarding fair housing obligations and reasonable accommodation obligations of housing providers under the Fair Housing Act and its implementing regulations; (b) within thirty (30) days of the entry of an order require Defendants to develop internal policies ensuring ongoing and future compliance with all requirements of the Fair Housing Act and its implementing regulations;

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 25

5.      For an award of actual damages in an amount to be proven at trial, but no less than $5,000;

6.      For an award of compensatory damages in an amount of $150,000.00 or a greater amount to be proven at trial;

7.      For Plaintiff's reasonable costs, disbursements, and attorney's fees incurred herein pursuant to 42 U.S.C. § 3613, and/or other applicable law; and

8.      For punitive damages against Defendants in an amount to be determined.

9.      Defendants should be jointly and severally liable for any and all damages, including an award of attorney's fees and costs, awarded in this proceeding; and,

10.     For such other and further relief as to the Court deems just and equitable.

DATED this 12th day of August 2019

ERTZ JOHNSON, LLP

__/s/ Eileen R. Johnson_____
Eileen R. Johnson
*Attorneys for Plaintiff*


## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues properly triable by a jury in the above-entitled matter.

DATED this 12th day of August 2019.

ERTZ JOHNSON, LLP

/s/ Eileen R. Johnson_____
Eileen R. Johnson
*Attorneys for Plaintiff*

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 26